Joseph B. Weinberger, Esq. (CASBN: 136798)
**WEINBERGER LAW FIRM**
1839 Iron Point Drive, Ste. 180
Folsom, CA 95630
Tel: (916) 357-6767
Fax: (916) 357-6766
joe@weinbergerlaw.net

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LEANN SANTOR

    Plaintiffs,

vs.

KATHRYN M. HARWELL, TONYA LASTER, JUAN PEREZ, MARGO KILGORE, JOSEPH GREENE, DAVID GRANADOS, MARIA PASILLA, COUNTY OF STANISLAUS, STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, CITY OF NEWMAN POLICE DEPARTMENT, and DOES 1 through 50, inclusive,

    Defendant

Case No.:

**COMPLAINT FOR DAMAGES**

Claim 1 – 42 USC §1983
    Unwarranted Seizure

Claim 2 – 42 USC §1983
    Deception

Claim 3 – Monell Related Claims

**DEMAND FOR JURY TRIAL**

## JURISDICTION AND VENUE

1.    Plaintiff LEANNN SANTOR brings this action pursuant to 42 U.S.C. § 1983, et seq., to redress the deprivation of rights secured to them under the United States Constitution, including the First, and Fourteenth Amendments, and under federal and state law. Said deprivations were inflicted by the Defendants herein, and each of them in some manner as alleged in further detail herein. Each of the Defendants herein were at all times acting in concert with the remaining defendants to inflict the harms alleged.

~ 1 ~

2. Jurisdiction is conferred on this court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983. Jurisdiction is also conferred by 28 U.S.C. § 1331 because the claims for relief derive from the United States Constitution and the laws of the United States. Supplemental Jurisdiction over the state Claims for Relief is conferred by 28 U.S.C. § 1367.

3. Because the acts and omissions complained of herein occurred in the County of Stanislaus, and it is believed that all defendants currently reside in the County of Stanislaus, venue is proper in the District Court for the Eastern District of California.

## PARTIES

4. At all times relevant to this Complaint, Plaintiff LEANNN SANTOR resided in the County of Stanislaus, California, maintaining a family as the mother of her children, O.L. and A.L. The minor O.L. was born in 2018 and the minor A.L. was born in 2016 and will be referred to herein by their initials to protect their identity.

5. At all times applicable herein, defendant, COUNTY OF STANISLAUS, was and is a public entity ("Stanislaus County" or "County of Stanislaus"). At all times mentioned herein, the STANISLAUS COUNTY COMMUNITY SERVICES AGENCY was and is a subdivision or agency of THE COUNTY OF STANISLAUS.

6. At all times mentioned herein Defendants TONYA LASTER, JUAN PEREZ, MARGO KILGORE, JOSEPH GREENE, DAVID GRANADOS and MARIA PASILLAS, were employees and/or agents of the COUNTY OF STANISLAUS acting within the course and scope of their duties and under color of law; hereafter "Social Worker Defendants."

7. At all times mentioned herein THE CITY OF NEWMAN was and is a public entity.

8. At all times mentioned herein, the NEWMAN POLICE DEPARTMENT was and is a subdivision or agency of THE CITY OF NEWMAN.

9. At all times mentioned herein individual Defendants POLICE OFFICERS DOE 1-10 were employees and/or agents of the CITY OF NEWMAN acting within the

course and scope of their duties and under color of law; hereafter "Police Officer Defendants."

10. Plaintiff is ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 100, and for that reason has sued such Defendants under such fictitious names. Plaintiff reserves the right and will seek leave of Court to amend this Complaint to identify said Defendants when their identities have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiff in that their conduct caused the damages and injuries set forth herein.

11. Plaintiff is informed and believes, and on such basis alleges that each of the above named parties was and is the agent, employee, principal, or employer of each of the remaining defendants and/or vice versa. In addition, Plaintiff is informed and believes, and on such basis alleges that the defendants named above, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above named defendants conspired with, and/or aided and/or abetted each of the remaining defendants in committing the acts herein alleged.

12. Whenever in this Complaint reference is made to any act of Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 100, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

13. Plaintiffs are informed and believe and on such basis allege that at all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-defendants, their agents and employees, as more fully alleged herein. Moreover, all of the Defendants agreed upon, approved, ratified, and/or conspired to commit all of the acts and/or omissions alleged in this Complaint.

## COMMON ALLEGATIONS & BACKGROUND

### Unwarranted Seizure

14. On May 8, 2018, Plaintiff LEANN SANTOR, was spending the evening with her children and their father at his residence in a mobile home/camper. LEANN SANTOR had smoked a small amount of medical marijuana and the father of the children had consumed a small amount of beer. As it was late, LEANNN SANTOR chose to remain in the home and she and the children went to sleep in the bed located on the premises.

15. At some point in time, LEANNN SANTOR awoke and found O.L. unresponsive with fluid coming out of his mouth. An ambulance was called and the child was transported to Emanual Medical Center. The child arrived at the medical Center at or about 2:00 am on May 9, 2018.

16. At 4:15 am Defendants Laster and Kilgore travelled to the home of the child's father. The Social Workers entered the premises without the permission of the father and without a warrant to allow them entrance to the premises. While on the premises they noted numerous empty beer cans and outside they observed what they believed to be some amount of marijuana.

17. At 5:26 am Defendants Laster and Kilgore met with representatives of Emanual Medical Center. At this time they were advised that upon arrival O.L. was cold, stiff, not breathing and did not have a heartbeat. They were informed that the minor was blue in the face and his extremities and that he was observed to have blood in his ear. They were also advised that the treating physician suspected that O.L. died from Sudden Infant Death Syndrome (SIDS).

18. Defendant Social Workers thereafter met with the treating physician, Dr. Coon. Dr. Coon stated that he suspects O.L. died from SIDS. The doctor reported no bruises or marks were observed on O.L. and that he appeared well cared for. Dr. Coon further reported that A.L. appeared well cared for as well.

19. Defendant Social Workers then interviewed the Father and Mother of A.L. and O.L. and advised them of their concerns.

20. At this point Mother and Father had been in the hospital for more than six hours and were dealing with the loss of their son. At no point did any of the medical professionals, law enforcement officials, or Social Workers indicate that either Mother or Father were incapacitated in any way. No one indicated that either was under the influence of Marijuana or alcohol.

21. On or about 7:30 am on May 9, 2018, Defendant Social Workers LASTER, KILGORE, PEREZ and GREENE met at their offices and determined to remove the child A.L. from the care and custody of her parents. Despite the easy access to a Judge of the Superior Court, no effort was made by any of the Defendant Social Workers to obtain a warrant for the removal of the child, A.L.'

22. Plaintiff is informed and believes and thereon alleges that on May 9, 2018, based on the information then in the possession of Defendant Social Workers, no reasonable basis existed for believing that A.L. was in imminent danger of sustaining serous bodily injury or death within the time it would have taken Defendant Social Workers or Stanislaus County Community Services Agency to obtain a warrant authorizing the seizure and/or examination of A.L.. At the time A.L. was removed from Plaintiff's care and custody, Defendant Social Workers possessed no evidence that A.L. had suffered any type of harm or abuse at the hands of Plaintiff. In reality, Plaintiff had never abused her children.

23. Despite having no specific, reasonable or articulable evidence that A.L. was in imminent danger of sustaining serous bodily injury or death within the short amount of time it would have taken to obtain a warrant, Defendant Social Workers conspired to allege false and fraudulent facts of imminent risk to substantiate their efforts to remove the child. Defendant Social Workers knew that no reasonable Judge would grant a warrant based on the facts and circumstances as they existed and particularly in light of the statements and reports of Dr. Coon that both children appeared to be well cared for and that the death of O.M. was the result of natural causes and specifically, SIDS from congestive heart failure.

24. In an effort to aid in the removal of the child from his parents, Defendant Social Workers enlisted that aid and assistance of officers employed by the Newton Police Department.

25. Plaintiff is informed and believes and on such basis alleges that, on or about May 9, 2018, Defendant Social Workers Laster and Kilgore, with the aid and assistance of officers employed by the Newton Police Department, and each of them without cause, a warrant, a court order, or exigent circumstances seized, detained, and removed Plaintiffs daughter A.L. from Plaintiffs care and delivered the child to the STANISLAUS COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES. This seizure of the child was unlawful and violated Plaintiffs Constitutional rights arising under the First and Fourteenth Amendments to the Constitution of the United States in that, as described below, there was no legal basis for the seizure. At the time of the seizure, the above identified Defendants were in possession of no reasonable or articulable evidence to suggest the child was in immediate danger of sustaining severe bodily injury at the hands of his parents. Moreover, at the time in question, the Defendants were fully aware that there was not a current, imminent and present danger to the child as she was in the presence of both parents and the maternal grandparents. In addition, Defendant Social Workers were told by the physician that the children appeared to be well cared for. They had no reasonable factual or legal basis to seize the child from her parents, and when they did so they unreasonably interfered with Plaintiffs rights to privacy, familial association and due process. Such conduct is actionable under 42 U.S.C. §1983.

26. At the time Social Worker Defendants with the aid and assistance of the Newman Police Department seized Plaintiffs child from her custody and care, the child was in good health and there was no need for any medical care to be administered to her. Moreover, there was no reasonable or articulable evidence to suggest the child was in immediate danger of physical or sexual abuse by Plaintiff, nor was there any indication that the physical home environment posed any threat to the child's health or safety.

27. At all relevant times during the Defendant Social Workers interactions with Plaintiff on May 9, 2018, it was and would have been immediately apparent to any reasonable social worker that Plaintiff was the child's mother and that she had an immediate right to custody and control of the child. There was no reasonable or articulable evidence to suggest that any other person was entitled to custody of the child, and there was no evidence to suggest the child had been injured. Lastly, there was no reasonable or articulable evidence to suggest than any

~ 6 ~

crime whatsoever had been committed, or that there was any other legal justification for the removal of Plaintiffs child from her care.

28. At the time of the warrantless removal of A.L. from her custody, Plaintiff LEANNN SANTOR was already grieving the loss of her son. The unconstitutional and illegal warrantless removal had a strong and severe emotional effect upon plaintiff. Defendants and each of them used this emotional outburst as a pretext to further detain LEANNN SANTOR and place her under involuntary treatment and thereafter use this pretext as a basis to further detain the child from her mother.

29. On or about May 9, 2018 at 2:55 a.m. the Emergency Department physician noted in the medical record his diagnostic impression was that O.L. suffered an acute cardiopulmonary arrest. This impression confirms that O.L. died of natural causes and through no actions of either parent. This information was made known to Defendant Social Workers by both the Emergency Physician and the nursing staff at Emanuel Medical Center.

30.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF CIVIL RIGHTS – U.S.C. § 1983
### Unwarranted Seizure
### Count 1

By PLAINTIFF Against TONYA LASTER, JUAN PEREZ, MARGO KILGORE, JOSEPH GREENE, COUNTY OF STANISLAUS, STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, CITY OF NEWMAN POLICE DEPARTMENT, and DOES 1 through 50, inclusive, inclusive

31. PLAINTIFF realleges, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 26.

32. Commencing on May 9, 2018, TONYA LASTER, JUAN PEREZ, MARGO KILGORE, JOSEPH GREENE, COUNTY OF STANISLAUS, STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, CITY OF NEWMAN POLICE DEPARTMENT, and DOES 1 through 50, inclusive, and each of them, were acting under color of state law when they jointly acted or knew and agreed and thereby conspired, to violate Plaintiffs' constitutional rights by, but not limited to, removing, detaining, and continuing to detain A.L. from the care, custody,

and control of her parents, without proper or just cause and/or authority, in the absence of any exigency, and without first obtaining a warrant or other court order.

33. At all times relevant herein, the right to familial association guaranteed under the First and Fourteenth Amendments to the United States Constitution was so "clearly established" that any reasonable government agent in Defendants' situation would know it is unlawful to seize a child from the care, custody, and control of her parents in the absence of exigent circumstances without first obtaining a warrant to do so. Furthermore, any reasonable government official would know that to do so would constitute a violation of the parents' well-elaborated constitutional right to live together without undue governmental interference.

34. None of the Defendant's sought, or obtained any type of warrant or court order prior to seizing A.L. Defendants, and each of them, jointly acted or conspired to seize the child, as described above, knowing that no warrant authorizing the child's seizure issued and that exigent circumstances did not exist. They also knew that neither parent consented to A.L.'s unwarranted seizure.

35. When A.L. was seized, she was receiving appropriate care -and lived in a safe environment.

36. There was no evidence or even reasonable allegations that LEANNN or the father had physically abused or harmed either child in any way. In fact, Defendant social workers were specifically advised that the children appeared to be well cared for, without bruising or other marks or any indication of neglect or abuse.

37. At no time ever did any of the Defendants have any specific, articulable evidence to support any reasonable basis to believe that A.L. was in immediate danger of sustaining serious bodily injury or death at the hands of Plaintiff or Mr. Lewis. In fact, when Defendants and each of them decided to remove A.L. they had no current knowledge of her circumstances sufficient to make a determination of exigent circumstances. Thereafter, when Defendants approached Plaintiff to remove A.L., Defendants and each of them were able to observe A.L. was in good and healthy condition, surrounded by her parents as well as her maternal grandparents, at the location where Plaintiff and A.L. regularly resided.

38. At the time of the conduct of Defendants, as alleged above, Plaintiffs rights were so clearly established that a reasonable police officer or social worker faced with similar circumstances would have known that their conduct was violative of Plaintiffs rights.

39. As a direct and proximate result of these Defendants' violations, and in accordance with 42 U.S.C. Section 1983, PLAINTIFF's civil rights have been violated in that she has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish, as well as to incur attorneys fees, costs and expenses in the underlying case and in this matter, as authorized by 42 U.S.C. §1988 in an amount not yet ascertained, all of which shall be shown according to proof at trial.

40. At no point did Defendants, or any of them, even bother to seek a warrant prior to seizing A.L. from her parents. Instead, Defendants, and each of them, intentionally, or with a reckless or malicious disregard for Plaintiffs' known rights, seized A.L. from her parents' care. At the time of the seizure, there was no specific or articulable evidence to show that A.L. was in any danger at the hands of either parent. Moreover, even if such a danger had existed, there were ample lesser intrusive alternative means of protecting the child – and Defendants knew it. Due to Defendants' knowing violation of Plaintiffs' rights, Plaintiffs are entitled to recover, and shall seek, punitive damages against the individual Defendants, and each of them, subject to proof at trial.

## SECOND CLAIM FOR RELIEF - §1983
**(Deception in The Presentation of Evidence to the Juvenile Court)**
**By Plaintiff Against Defendants DAVID GRANADOS, MARIA PASILLAS, and DOES 1 through 100, inclusive**

41. Plaintiff incorporates the above allegations of fact and law as though fully set forth herein.

42. The right to be free from judicial deception in juvenile dependency proceedings was clearly established prior to 2017, such that any reasonable government official in Defendants' situation would know that it was unlawful to lie, fabricate evidence, or suppress material exculpatory evidence in juvenile court proceedings.

43. After Defendants seized A.L. they were required to draft a report, which accompanies a petition filed with the California Court. The California Court relies on this evidence and report to determine – at the outset – whether A.L.'s seizure and continued detention was necessary. This initial dependency hearing is the first hearing in a juvenile dependency action – it is akin to an arraignment in criminal proceedings.

44. On May 11, 2018, Defendants Grandoa and Pasillas signed A.L.'s Detenion Report. Defendants' Detention Report is an official document. Defendants prepared it and filed it with the California Court to initiate A.L.'s dependency proceedings. By law, the Detention Report is required to be verified and must not contain false and/or untrue statements or information. The matter set out in the Detention Report is required to be honest, accurate, and complete in all material respects. In addition, to the extent exculpatory information exists, it is required to be disclosed to the California Court on the face of the report.

45. Defendants also included knowingly false statements in their May 11, 2018, Juvenile Dependency Petition ("Petition"). Granados verified this petition under penalty of perjury. By law, the Petition is required to be verified under penalty of perjury. The matter set out in the Petition is required to be honest, accurate, and complete in all material respects. In addition, to the extent exculpatory information exists, it is required to be disclosed to the California Court on the face of the petition.

46. On May 11, 2018, Granados signed the Petition under penalty of perjury, and attested to the veracity of all information contained therein. After signing the petition "under penalty of perjury," the Petition was filed with the California Court.

47. Among the material facts, the Petition falsely stated that:
   a. Ms. Santor consistently co-slept with her children including the newborn on a twin size bed. This was not true as Ms. Santor slept on a much larger bed with ample room for the children.
   b. Ms. Santor's newborn O.L. was found unresponsive as a result of co-sleeping and was later determined O.L. had passed away. This was not true as the

   medical professionals found the cause of death to be Congestive Heart Failure, a natural cause of death.

   c. There was a marijuana pipe in easy access of the one year old A.L. This was not true as the marijuana pipe was empty and located outside of the premises while the child was inside the premises with both her mother and father.

   d. Ms. Santor has mental health issues. This is not true as Ms. Santor was emotionally upset by the death of her son and the illegal and unconstitutional removal or her only other child.

   e. The residence that Ms. Santor and Mr. Lewis shared has health and safety issues. This is not true as Ms. Santor resides with her parents but would visit with the father of her children.

48. The above identified false statements and the suppressed exculpatory evidence are only examples. They do not constitute the full extent of Granados' and Pasillas' deception in the presentation of evidence to the California Court in the Petition and Detention Report.

49. Due to the intentional and despicable nature of the Defendants' misconduct, as described throughout, Plaintiff is entitled to recover, and shall seek, punitive damages against the individual Defendants, and each of them, subject to proof at trial.

Count 3

THIRD CLAIM FOR RELIEF: *MONELL-RELATED* CLAIMS

By PLAINTIFF Against Defendants THE COUNTY OF STANISLAUS and THE CITY OF NEWMAN, KATHRYN M. HARWELL and DOES 1 through 100, inclusive

50. Plaintiff realleges, and to the extent applicable, incorporates herein as if set forth in full, paragraphs 1 through 47.

51. At all relevant times herein, Defendants THE COUNTY STANISLAUS, KATHRYN M. HARWELL and THE CITY OF NEWMAN, including through their respective Social Services Agency and Police Department, established and/or followed policies, procedures, customs and/or practices (hereinafter collectively referred to as

"policy" or "policies") which policies were the cause of violations of Plaintiffs constitutional rights, including those arising under the First and Fourteenth Amendments, by, but not limited to:

- The policy of detaining and/or removing children from the care of their parent(s) without providing the parent(s) with adequate notice of their removal, or an opportunity to be heard;
- The policy of removing and detaining children from their parents beyond a reasonable period after the basis for detention is negated; by
- Acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, and employees, in proving the Constitutional protections guaranteed to individuals, including those under the First and Fourteenth Amendment, when performing actions related to the removal of children from the care of their parents, child abuse investigations, and/or dependency type proceedings.
- By having a policy in place, or lack thereof, that allows for the removal and detention of a child from their parents where there is no warrant obtained, and there are no exigent circumstances present.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected nature of investigative and juvenile records).

52.   Defendants, and each of them, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices which conform with, and provide for the protections guaranteed under the United States Constitution, including the First and Fourteenth Amendments; to use reasonable care to select, supervise, train, control and review the activities of all agents, officers and employees in their employ, including within; and further, to refrain from acting with deliberate indifference to the Constitutional rights of Plaintiff so as to not cause her the injuries and damages alleged herein.

53.   Defendants, and each of them, breached their respective duties and obligations to Plaintiff by, but not limited to, failing to establish, implement and follow the correct and

proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review their agents and employees as to their compliance with Constitutional safeguards; and by permitting the individual defendants, and DOES 1 through 100, Inclusive, to engage in the unlawful and unconstitutional conduct as hereinabove alleged.

54. Defendants, and each of them, knew or should have known that by breaching the above-mentioned duties and obligations, that it was foreseeable that they would, and did, cause Plaintiff to be injured and damaged by their wrongful policies and acts as alleged herein, and that such breaches occurred in contravention of public policy and as to their legal duties and obligations to Plaintiff.

55. These actions, and/or inactions, of Defendants, and each of them, are the direct and proximate cause of Plaintiffs injuries, as alleged herein in that the policies, customs usages, and practices of the Defendants, and each of them, were the moving force behind the constitutional violations alleged herein; and as a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiff has incurred, and will continue to incur, attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. §1988, to an extent and in an amount subject to proof at trial.

///
///
///

## PRAYER

WHEREFORE, PLAINTIFF prays for judgment against Defendants, and each of them, as follows:

1. Plaintiff demand a jury trial as to the issues so triable;
2. General damages and special damages according to proof;
3. Punitive damages as allowed by law, against the individual defendants only and not against any municipal defendant or any agency thereof;
4. Attorney's fees pursuant to 42 U.S.C. § 1988, and any other appropriate statute;
5. Costs of suit incurred herein; and
6. Such further relief as the Court deems just and proper.

Dated: 11-07-2019

Joseph B. Weinberger,
Attorney for Plaintiff