1

2

3

4

5              **UNITED STATES DISTRICT COURT**

6              **EASTERN DISTRICT OF CALIFORNIA**

7

8  | **LEANN SANTOR,** | **CASE NO. 1:19-CV-1593 AWI SKO** |

9  | **Plaintiff** | |

10 | **v.** | **ORDER ON DEFENDANTS' MOTIONS TO DISMISS** |

11 | **KATHRYN M. HARWELL, et al.,** | |

12 | **Defendants** | (Doc. Nos. 18, 20) |

13

14

15         This case stems from the removal of Plaintiff Lean Santor's ("Santor") children by

16 personnel from the County of Stanislaus ("the County") and the City of Newman Police

17 Department ("the City").  Santor alleges three causes of action under 42 U.S.C. § 1983 for

18 violations of the First and Fourteenth Amendments and for *Monell* liability.  Currently before the

19 Court are two Rule 12(b)(6) motions, one by the City and one by the County and County

20 personnel.  For the reasons that follow, the motions will be granted in part and denied in part.

21

22                          **RULE 12(b)(6) FRAMEWORK**

23         Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

24 plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

25 dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

26 absence of sufficient facts alleged under a cognizable legal theory.  See Mollett v. Netflix, Inc.,

27 795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-

28 pleaded allegations of material fact are taken as true and construed in the light most favorable to

the non-moving party, and all reasonable inferences are made in the non-moving party's favor. United States ex. rel. Silingo v. Wellpoint, Inc., 904 F.3d 667, 676 (9th Cir. 2018).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint, or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).  To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility."  Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.  The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.  Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014).  If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ."  Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016).  However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities.  Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**BACKGROUND**

From the Complaint, on May 8, 2018, Santor was spending the evening with her two children (O.L. and A.L.)[1] and their father at his mobile home.  Santor smoked a small amount of medical marijuana and the father had a small amount of beer.  Santor chose to remain at the mobile home with her two children, and the three of them slept in a bed.  At some point in the night, Santor awoke to find O.L. unresponsive with fluid coming out of his mouth.  An ambulance was summoned and O.L. arrived at the hospital at 2:00 a.m. on May 9, 2018.  O.L. died.  At 2:55 a.m., the emergency department noted that O.L. suffered acute cardiopulmonary arrest and the treating physician, Dr. Coon, believed that O.L's death was the result of Sudden Infant Death Syndrome ("SIDS").

At 4:15 a.m., Defendants Tanya Laster ("Laster") and Margo Kilgore ("Kilgore"), social workers from the County, arrived at the mobile home.  They entered the mobile home without permission and without a warrant.  While on the premises, Laster and Kilgore observed numerous empty beer cans and, outside, what they believed to be "some amount" of marijuana.

At 5:26 a.m., Kilgore and Laster met with hospital staff.  The staff informed Laster and Kilgore that O.L had arrived at the hospital without a heartbeat, had blood in his ear, and was cold, stiff, unbreathing, and blue in the face and extremities.  They were advised that Dr. Coon suspected that O.L. had died of SIDS.  Thereafter, they met with Dr. Coon.[2]  Dr. Coon explained that O.L. appeared to have suffered acute cardiopulmonary arrest, there was a suspicion of SIDS, there were no bruises or marks on O.L., and O.L. and A.L. appeared to be well cared for.

The social workers then interviewed Santor and the father.  Although they were dealing with the loss of their son, there is no indication that any medical professional, law enforcement officer, or social worker believed that either Santor or the father were incapacitated or under the

---

[1] A.L was born in 2016 and O.L was born in 2018.

[2] The Complaint is somewhat ambiguous regarding who met the treating physician.  Laster and Kilgore appear to have been the investigating social workers and thus, were likely the ones who interviewed the physician.  However, the Complaint alleges that "Defendant Social Workers" met with the physician, and the term "Defendant Social Workers" refers to the six County social workers who are named as defendants in this case.  It is highly unlikely that, in the early morning hours of May 9, 2018, all six social workers were investigating this single case.  Because only Kilgore and Laster were identified in the complaint and appear to have been the investigating social workers, the Court will read the Complaint as reasonably alleging that only Kilgore and Laster interviewed Dr. Coon, Santor, and the father.

influence of drugs or alcohol.  Kilgore and Laster explained their concerns to Santor and the father.

At 7:30 a.m., Laster, Kilgore, Juan Perez ("Perez"), and Joseph Greene ("Greene") met at their offices and determined to remove A.L. from the custody of Santor and the father.  There was no attempt to obtain a warrant for the removal of A.L.  However, there was also no reasonable basis for believing that A.L. was in imminent danger of sustaining serious bodily injury or death within the time it would have taken the social workers to obtain a warrant for either the removal or examination of A.L.  There was no information that A.L had suffered any type of harm or abuse at the hands of Santor, and she had never in fact abused A.L. or O.L.  Kilgore, Laster, Greene, and Perez[3] conspired to allege false and fraudulent facts of imminent risk to substantiate their efforts to remove A.L.  Kilgore, Laster, Greene, and Perez knew that no reasonable judge would grant a warrant on the facts and circumstances as they existed, particularly given the statements by the hospital physician that A.L. and O.L. appeared well cared for and that O.L. appeared to have died as a result of SIDS.  Kilgore, Laster, Greene, and Perez enlisted the aid of the City to remove A.L.

Later on May 9, Laster and Kilgore, along with City police officers, without cause or a warrant, seized, detained and removed A.L. from Santor's care and delivered A.L. to the County Department of Health and Human Services.  The seizure was unlawful as there was no reasonable or articulable evidence that suggested A.L. was in immediate danger at the hands of Santor.  At the time of seizure, A.L. was in good health, had no need of medical care, was not in a physical home environment that posed a threat to her health and safety, and was in the presence of both her parents and maternal grandparents.  There was also no reason to believe that Santor was not entitled to custody of A.L. or that Santor had committed a crime.  When A.L. was removed, this caused a strong and emotional outburst from Santor, as she was already grieving the loss of O.L.

---

[3] As in previous allegations, the Complaint alleges that the "Defendant Social Workers" had no basis to believe that A.L. was in imminent danger and had conspired to allege false and fraudulent facts.  Again, the term "Defendant Social Workers" is defined in the Complaint to mean all six County social worker defendants.  However, the Complaint specifically alleged that Kilgore, Laster, Perez, and Greene met and determined to remove A.L.  Because of this allegation, it seems that only Kilgore, Laster, Perez, and Greene would be conspiring against Santor.  There are no allegations regarding the other two County social worker defendants.  Without allegations that expressly connect the other two County social worker defendants, particularly when allegations expressly connect four of the six social workers to the decision to remove A.L., the Court will only read the Complaint as reasonably identifying conduct by Kilgore, Laster, Perez, and Greene.

1  The outburst was used by "Defendants" as pretext to detain her for involuntary treatment and

2  further keep A.L from Santor.

3       On May 11, 2018, County social workers Defendants David Granados ("Granados") and

4  Maria Pasillas ("Pasillas") drafted a Detention Report for the Stanislaus County Superior Court.[4]

5  The report was drafted in order to begin dependency proceedings.  The Dependency Report is

6  relied upon by the Superior Court to determine whether continued detention is necessary.

7  Detention Reports are to be verified and are not to contain false information.  Granados and

8  Pasillas included key false information including:  (1) Santor consistently slept with her children

9  (including O.L.) on a twin sized bed (even though Santor slept in a much larger bed with ample

10 room for her children); (2) Santor's newborn was found unresponsive as a result of co-sleeping

11 and later died (even though the cause of death was found to be Congestive Heart Failure); (3) there

12 was a marijuana pipe within easy access of A.L (even though the marijuana pipe was empty and

13 located outside the mobile home while the children were sleeping inside the mobile home); (4)

14 Santor has mental health issues (even though the emotional outburst was simply the result of being

15 emotionally upset by the loss of O.L. and the removal of A.L.); and (5) the residence that Santor

16 and the father shared has health and safety issues (even though Santor resides with her parents but

17 would occasionally visit the father with her children).  These are only examples of the inaccurate

18 information that was included in the Dependency Report, not to mention the suppressed

19 exculpatory information.

20

21 **I.      COUNTY'S MOTION TO DISMISS**

22      1.      First Cause of Action – Unconstitutional Removal/Unwarranted Seizure

23      *Defendants' Argument*

24      Defendants argue that Santor's rights were not violated when A.L. was taken into custody.

25 The Complaint acknowledges essentially that O.L. was found dead with drugs and alcohol in close

26 proximity to him.  Any reasonable social worker would have had serious concerns for the safety of

27

28 ────────────────
[4] The Complaint merely identifies the "California Court."  Because the precise identity of the Court is not material, the court will view the Complaint as making allegations regarding the Stanislaus County Superior Court.

1    another child at the residence, particularly a 3 year old like A.L.  This circumstance creates an

2    exigency, and no facts are alleged that would demonstrate that an exigency did not exist.

3         Alternatively, Defendants argue that they are entitled to qualified immunity.  Although the

4    Ninth Circuit has articulated the standard by which a social worker may remove a child from her

5    parents' custody without prior judicial authorization, that is, reasonable cause to believe that the

6    child is in imminent danger of suffering a serious injury, the Ninth Circuit has not defined

7    "reasonable cause" or "imminent danger."  In 2016 and 2018, the Ninth Circuit reviewed its case

8    law and held that, in the context of a social worker who removed a child within days of birth

9    where the newborn had traces of illegal drugs in its system and the mother had a history of drug

10   abuse, the law was not clearly established that removing the child without prior judicial approval

11   was unconstitutional.  Given the state of the law as it existed at the time A.L. was removed, a

12   reasonable social worker would not clearly know that removing A.L. was unlawful.

13        *Plaintiff's Opposition*

14        Santor argues that there is nothing in the Complaint that establishes, as a matter of law,

15   that A.L. was in any risk, let alone imminent risk of substantial physical injury.  The Complaint

16   alleges that there was no sign of physical abuse to A.L., there was nothing to indicate that either

17   Santor or the father were intoxicated or incapable of taking care of A.L., and there is nothing that

18   indicates that the actions of either Santor or the father contributed to O.L.'s death.  Rather, O.L.

19   died from SIDS.  The law was sufficiently clear that any reasonable social worker would know

20   that there was no imminent danger facing A.L. when Defendants removed her from Santor's care.

21        *Legal Standards*

22        a.    Fourteenth Amendment – Familial Association

23        "Parents and children have a well-elaborated constitutional right to live together without

24   governmental interference."[5]  Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000).  "The

25   Fourteenth Amendment guarantees that parents will not be separated from their children without

26   _____

27   [5] The Fourth Amendment and Fourteenth Amendment protect the parent-child relationship from unwanted state
     interference.  Kirkpatrick v. County of Washoe, 843 F.3d 784, 788 (9th Cir. 2016).  When a child is removed from a
     parent's home, the parent's right is protected by the Fourteenth Amendment and the child's right is protected by the

28   Fourth Amendment.  See id. at 789.  However, "the tests under the Fourth and Fourteenth Amendment for when an
     official may remove a child from parental custody without a warrant are equivalent."  Id. .

6

1  due process of law except in emergencies." Mabe v. San Bernardino County, Dep't of Pub. Soc.

2  Servs., 237 F.3d 1101, 1107 (9th Cir. 2001).  Thus, government officials ordinarily are "required

3  to obtain prior judicial authorization before removing a child from the custody of her parent."

4  Kirkpatrick v. County of Washoe, 843 F.3d 784, 790 (9th Cir. 2016) (en banc); see Mabe, 237

5  F.3d at 1106-07; Wallis, 202 F.3d at 1136.  A government official may remove a child from a

6  parent's custody without prior judicial authorization only if the official has "reasonable cause to

7  believe that the child is in imminent danger of serious bodily injury and that the scope of the

8  intrusion is reasonably necessary to avert that specific injury." Rogers v. County of San Joaquin,

9  487 F.3d 1288, 1294 (9th Cir. 2007); Mabe, 237 F.3d at 1106; Wallis, 202 F.3d at 1138.  Stated

10 differently, if "officials have reasonable cause to believe that the child is likely to experience

11 serious bodily harm in the time that would be required to obtain a warrant," then officials may

12 remove a child without prior judicial authorization.  Demaree v. Pederson, 887 F.3d 870, 878 (9th

13 Cir. 2018); Kirkpatrick, 843 F.3d at 790; Rogers, 487 F.3d at 1294.  Three requirements can be

14 gleaned to satisfy this exception to the general rule requiring prior judicial authorization.  First, the

15 injury or abuse to the child must be "articulable, imminent, and serious," and the official's

16 "reasonable cause" must be "cogent [and] fact-focused[.]" Demaree, 887 F.3d at 883-84.  Second,

17 officials "cannot seize children suspected of being abused or neglected unless reasonable avenues

18 of investigation are first pursued." Keates v. Kolie, 883 F.3d 1228, 1237 (9th Cir. 2018); Wallis,

19 202 F.3d at 1138.  Third, "because the 'scope of the intrusion' must be 'reasonably necessary to

20 avert' a specific injury, the intrusion cannot be longer than necessary to avert the injury." Keates,

21 883 F.3d at 1237; see Wallis, 202 F.3d at 1140-41.  In sum, case law clearly establishes that "the

22 rights of parents and children to familial association under the [Constitution] are violated if a state

23 official removes children from their parents without their consent, and without a court order,

24 unless information at the time of the seizure, after reasonable investigation, establishes reasonable

25 cause to believe that the child is in imminent danger of serious bodily injury, and the scope,

26 degree, and duration of the intrusion are reasonably necessary to avert the specific injury a issue."

27 Keates, 883 F.3d at 1237-38.  The existence of reasonable cause, the sufficiency of an

28 investigation, and the scope of an intrusion are questions of fact. See Wallis, 202 F.3d at 1138-40.

1      b.     Qualified Immunity

2          Qualified immunity applies when an official's conduct does not violate clearly established

3   statutory or constitutional rights of which a reasonable person would have known. White v. Pauly,

4   137 S. Ct. 548, 551 (2017).  "Officers are entitled to qualified immunity under § 1983 unless (1)

5   the officers violate a federal statutory or constitutional right, and (2) the unlawfulness of their

6   conduct was "clearly established at the time." District of Columbia v. Wesby, 138 S.Ct. 577, 589

7   (2018); White, 137 S.Ct. at 551. "Clearly established" means that the statutory or constitutional

8   question was "beyond debate," such that every reasonable official would understand that what he

9   is doing is unlawful.  See Wesby, 138 S.Ct. at 589; Vos v. City of Newport Beach, 892 F.3d 1024,

10  1035 (9th Cir. 2018).  This is a "demanding standard" that protects "all but the plainly

11  incompetent or those who knowingly violate the law." Wesby, 138 S.Ct. at 589 (citing Malley v.

12  Briggs, 475 U.S. 335, 341 (1986)).  To be "clearly established," a rule must be dictated by

13  controlling authority or by a robust consensus of cases of persuasive authority.  Id.; see also Perez

14  v. City of Roseville, 882 F.3d 843, 856-57 (9th Cir. 2018) (noting that Ninth Circuit precedent is

15  sufficient to meet the "clearly established" prong of qualified immunity).  In examining whether a

16  rule/right is clearly established, courts are to define the law to a "high degree of specificity," and

17  not "at a high level of generality." Wesby, 138 S.Ct. at 590.  The key question is "whether the

18  violative nature of particular conduct is clearly established" in the specific context of the case.

19  Vos, 892 F.3d at 1035 (quoting Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)). Although it is not

20  necessary to identify a case that it is "directly on point," generally the plaintiff needs to identify a

21  case where an officer acting under similar circumstances was held to have violated federal right.

22  Wesby, 138 S. Ct. at 577; Vos, 892 F.3d at 1035; Shafer v. City of Santa Barbara, 868 F.3d 1110,

23  1118 (9th Cir. 2017).  Whether a constitutional right was violated is generally a question of fact

24  for the jury, but whether a right was clearly established is a question of law for the judge.  Morales

25  v. Fry, 873 F.3d 817, 823 (9th Cir. 2017).

26      *Discussion*

27      a.     Constitutional Violation

28          At the time A.L. was removed from Santor, it appears that Laster and Kilgore were aware

8

of O.L's death, had been to the father's mobile home, had spoken with medical personnel, and had spoken with Santor and the father. It is reasonable at this stage to infer that the information obtained by Laster and Kilgore is the same information that is alleged in the Complaint. Viewing the allegations in the light most favorable to Santor and making all reasonable inferences in her favor, see Silingo, 904 F.3d at 676, Laster and Kilgore saw an unknown quantity of empty beer cans inside the mobile home and observed what they believed to be "some amount" of marijuana outside the trailer. They learned that the father had consumed a small amount of beer that evening and that Santor had consumed a small amount of medical marijuana, and they observed that neither Santor nor the father appeared to be intoxicated or incapable of caring for A.L. They learned that O.L. died of SIDS/an acute cardiac episode, but that O.L appeared to be otherwise well cared for and had no signs of abuse. A.L. also appeared well cared for and had no signs of abuse. Finally, they would have learned that A.L. did not reside with the father at his mobile home, rather, A.L. resided with Santor at the home of Santor's parents. Santor and her children would only occasionally spend time at the father's mobile home.

Under these circumstances, the Court agrees with Santor that A.L. was not facing an imminent threat of serious injury or abuse at the time she was removed from Santor's residence. O.L. died of natural causes, not from neglect or any kind of abuse. There is nothing from the Complaint that remotely links O.L.'s death with a danger that A.L. also faced.[6] Santor and the father did not consume controlled substances to the point of intoxication or to the point that they could not care for A.L., and there are no allegations that suggest that Santor was otherwise incapable of caring for A.L. Assuming marijuana was found outside the mobile home, there is no indication that A.L would have had access to it. Further, empty beer cans or a messy mobile home does not represent an imminent threat of a serious physical injury to A.L. Finally, A.L. did not reside at the residence where beer cans and marijuana were observed. A.L. and Santor resided with Santor's parents at the parents' home. It was only the father who resided in the mobile home, and Santor and A.L. on occasion would visit and spend time with the father at the mobile home.

---

[6] In fact, information from the California Department of Public Health indicates that A.L., who was going on 3 years of age, was under no threat from SIDS. "SIDS is the sudden unexplained death of an infant *under one year of age*." https://www.cdph.ca.gov/programs/cfh/dmcah/SIDS/Pages/Default.aspx (emphasis added0.

1  Any potential dangers that might be arguably be deemed significant existed at the mobile home,

2  not at A.L.'s actual residence.

3        Therefore, the Complaint quite plausibly alleges that there was no threat that was so

4  imminent and grave that prior judicial authorization could not be procured.  Empty beer cans

5  inside, and "some amount" of marijuana outside, of a mobile home that is visited "occasionally"

6  by a child with supervision, combined with a younger sibling's natural cause of death that had

7  nothing to do with beer cans or "some amount" of marijuana, does not demonstrate an imminent

8  and serious risk of injury to that child.  Because the allegations show the absence of reasonable

9  cause to believe that a serious injury was imminent, dismissal is not appropriate.[7]

10        b.        Qualified Immunity

11        About one month prior to the events giving rise to this lawsuit, the Ninth Circuit denied

12  qualified immunity to social workers who removed children from their parents' home without

13  prior judicial authorization because the parents had taken photographs of the children's exposed

14  buttocks.  See Demaree, 887 F.3d at 874.  In relevant part, the Ninth Circuit explained:

15
16
17
18
19
20
        When evaluating qualified immunity claims, "[w]e do not require a case directly on
        point, but existing precedent must have placed the statutory or constitutional
        question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  It is
        "beyond debate," id., that existing Ninth Circuit precedent establishes that children
        can only be taken from home without a warrant to protect them from imminent
        physical injury or molestation in the period before a warrant could be obtained.
        See Mabe, 237 F.3d at 1108-09.  The clearly established case law requires
        articulable, imminent, and serious physical injury or physical abuse to children to
        justify removing them from their parents' home without a judicial order. There was
        no such injury identified here.

21
22
23
        Put another way, to say a child can be removed only if x is likely to happen
        necessarily means she cannot be removed if there is no indication that x is likely to
        happen.  That there is no case law concerning a situation in which y, but not x, may
        be likely to happen does not make the rule setting the standards for removal any
        less clear—the rule is that only a reasonable fear of x, not y, can provide a
        constitutional basis for exigent removal.

24
25
26
        Here, the rule remains that there can be no removal without a court order "absent
        evidence that the child was in imminent danger of serious bodily injury."
        Kirkpatrick, 843 F.3d at 792.  The risk identified here simply does not meet that
        standard, as it does not involve physical injury or abuse.

27  _____

    [7] The Court notes that, viewing the allegations in the light most favorable to Santor, the allegations suggest that the
28  investigation was finished in a matter of hours and thus, not particularly thorough.  An inadequate/unreasonable
    investigation will undercut the existence of "reasonable cause."  See Keates, 883 F.3d at 1237; Wallis, 202 F.3d at
    1138-40.

. . . . .

> We do not here deal with a "general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment," which "is of little help in determining whether the violative nature of particular conduct is clearly established." al-Kidd, 563 U.S. at 742.  Instead, we have here a very specific line of cases, culminating in *Rogers* and *Mabe*, which identified and applied law clearly establishing that children may not be removed from their homes without a court order or warrant absent cogent, fact-focused reasonable cause to believe the children would be imminently subject to physical injury or physical sexual abuse. *Rogers*, the last in the series before the events in this case, summarized that law and explained why qualified immunity was inapplicable: "Prior to the events in question, we had repeatedly held that a family's rights were violated if the children were removed absent an imminent risk of serious bodily harm. A reasonable social worker would need nothing more to understand that she may not remove a child from [his or her] home on the basis of a [situation] that does not present such a risk." 487 F.3d at 1297.  *Mabe*, *Rogers*, and their predecessors thus gave clear notice of the law to social workers responsible for protecting children from sexual abuse and families from unnecessary intrusion.

Id. at 883-84.[8]

*Demaree*'s analysis applies here.  Defendants never clearly articulate what threat A.L. actually faced by remaining in Santor's care.  A.L. was in good health, had no signs of abuse, did not have ready access to the discovered marijuana (assuming that marijuana was actually found), and did not reside at the mobile home with the father.  Further, the apparent cause of O.L.'s death appears to have no relation to A.L. in terms of A.L.'s wellbeing and care.  The injury or abuse to the child must be "articulable, imminent, and serious," and the official's "reasonable cause" must be "cogent [and] fact-focused[.]"  Id.  The allegations in the Complaint clearly defeat both requirements.  As *Demaree* explained, without a basis, i.e. reasonable cause, to believe that an imminent risk of serious injury is present such that prior judicial authorization cannot be timely obtained, no reasonable social worker can conclude that removal without prior judicial approval is lawful.  Since the allegations show that there was no imminent, articulable, serious threat to A.L., *Demaree* defeats Defendants' request for qualified immunity.

Defendants rely on *Kirkpatrick* and *Dunkle v. Dale*, 729 F. App'x 616 (9th Cir. 2018) to argue that qualified immunity is appropriate.  Both *Kirkpatrick* and *Dunkle* involved the removal of newborns where the mothers were known to take illegal drugs and illegal drugs were detected in the newborns.  See Dunkle, 729 F. App'x at 616-17; Kirkpatrick, 843 F.3d at 786-87.

---

[8] The Court notes that the Ninth Circuit denied qualified immunity to the social workers in both *Mabe* and *Rogers*. See Rogers, 487 F.3d at 1297; Mabe, 23\ F.3d at 1108-09.

1  *Kirkpatrick* found that qualified immunity was appropriate because, although the removal was

2  unconstitutional, "no case had addressed the level of risk of physical harm at issue where a

3  potentially abusive mother is in the hospital but could leave with the child[.]"  <u>Demaree</u>, 887 F.3d

4  at 883 (discussing and distinguishing <u>Kirkpatrick</u>, 843 F.3d at 793).  *Dunkle* merely followed

5  *Kirkpatrick* and granted qualified immunity because the events that were at issue had taken place

6  several years prior to *Kirkpatrick*.  <u>See</u> <u>Dunkle</u>, 729 F. App'x at 617.

7        *Kirkpatrick* and *Dunkle*'s qualified immunity analyses focused on a particular fact pattern,

8  as explained in *Demaree*.  That fact pattern is nowhere close to this case.  No illegal drugs were

9  detected in A.L's system, the use of medical marijuana was at least legal under California law,

10  there was no indication of any abuse to or injury against A.L., and Santor had already returned to

11  her residence (not the father's mobile home) when Defendants removed A.L. from Santor's

12  custody.  The qualified immunity analysis of *Demaree*, not *Kirkpatrick* (and certainly not *Dunkle*),

13  controls for purposes of this motion.[9]  *Kirkpatrick* and *Dunkle* do not aid Defendants.

14        Dismissal on the basis of qualified immunity is inappropriate.

15        <u>2.</u>      <u>Second Cause of Action – Judicial Deception</u>

16        *<u>Defendants' Argument</u>*

17        Defendants argue that dismissal is appropriate because, although the Complaint identifies

18  false statements, there are no allegations that describe causation.  That is, the Complaint is silent

19  as to whether the alleged false statements had any impact on the state court's actions, or even if

20  the state court considered the statements.

21        *<u>Plaintiff's Opposition</u>*

22        Santor argues that Granados and Pasillas intentionally misrepresented facts to the state

23  court which resulted in the continued removal of A.L. The misrepresentations were perjury.  No

24  reasonable social worker could believe that such perjury/misrepresentation is lawful.  To the

25  extent that the allegations are unclear, Santor requests leave to amend.

26

27  _____
[9] Qualified immunity may be raised during the motion to dismiss, summary judgment, and trial stages.  <u>See</u> <u>Behrens v.</u>

28  <u>Pelletier</u>, 516 U.S. 299, 306-08 (1996); <u>Eddy v. Virgin Islands Water & Power Auth.</u>, 256 F.3d 204, 210 n.3 (3d Cir. 2001); <u>see also</u> <u>Marks v. Clarke</u>, 102 F.3d 1012, 1017 n.8 (9th Cir. 1996).

1

*Legal Standard*

2        The Ninth Circuit recognizes claims based on a state official's false statements made

3 during the course of legal proceedings.  See Keates, 883 F.3d at 1240; Chism v. Washington, 661

4 F.3d 380, 386 (9th Cir. 2011).  A claim of judicial deception has two elements:  (1) an official's

5 deliberate falsehood or reckless disregard for the truth, and (2) but for the dishonesty, the judicial

6 action at issue would not have occurred.  See Chism, 661 F.3d at 386; Liston v. County of

7 Riverside, 120 F.3d 965, 973 (9th Cir. 1997); see also Keates, 883 F.3d at 1240.  "If a state official

8 'submitted an affidavit that contained statements he knew to be false or would have known were

9 false had he not recklessly disregarded the truth . . . he cannot be said to have acted in a reasonable

10 manner, and the shield of qualified immunity is lost.'"  Keates, 883 F.3d at 1240 (quoting Chism,

11 661 F.3d at 393).

12

*Discussion*

13        After review, the Court agrees with Defendants.  The Complaint identifies a list of 5 non-

14 exclusive falsehoods that were allegedly made by Granados and Pasillas as part of the Detention

15 Report.  The Court will accept that the statements are false and were deliberately or recklessly

16 made.  However, the Complaint does not allege that the state court proceedings led to the

17 continued separation of A.L. from Santor or that such a result was because of the

18 misrepresentations made by Granados and Pasillas.[10]  Cf. Chism, 661 F.3d at 386.  Additional

19 allegations are necessary to plausibly demonstrate harm and causation.  Given these deficiencies,

20 no plausible claim is stated and dismissal is appropriate.

21        3.        Third Cause of Action – *Monell* Liability

22        *Defendants' Argument*

23        Defendants argue that, because there was no constitutional violation, there is no *Monell*

24 liability.  Defendants also argue that the allegations that support *Monell* liability are threadbare at

25 best and devoid of any factual allegations that suggest that the County has a long-standing policy

26 of detaining or removing children from their parents.  There are also no factual allegations that

27

28    [10] The opposition indicates that the result of the state court proceedings was the continued separation of A.L. from
Santor, but the Complaint does not actually make that allegation.

1    demonstrate either deliberate indifference by the County or that show that any policy was the

2    moving force behind a constitutional violation.  Therefore, the claim should be dismissed.

3         *Plaintiff's Opposition*

4         Santor argues that under Ninth Circuit precedent, a *Monell* claim is sufficient even if it is

5    based on nothing more than a bare allegation that an officer's conduct was done pursuant to an

6    official policy, custom, or practice.  Santor also argues that she has identified the policies at issue

7    and does not need to identity who commenced the policies.

8         *Legal Standard*

9         Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be

10   liable for causing a constitutional deprivation.  Monell v. Department of Soc. Servs., 436 U.S. 658,

11   690 (1978); Castro v. County of L.A., 797 F.3d 654, 670 (9th Cir. 2015).  A municipality,

12   however, "cannot be held liable solely because it employs a tortfeasor or, in other words, a

13   municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat superior* theory."

14   Monell, 436 U.S. at 691; see Castro, 797 F.3d at 670.  Liability only attaches where the

15   municipality itself causes the constitutional violation through "execution of a government's policy

16   or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

17   represent official policy."  Monell, 436 U.S. at 694; Price v. Sery, 513 F.3d 962, 966 (9th Cir.

18   2008).  Municipal liability may be premised on: (1) conduct pursuant to a formal or expressly

19   adopted official policy; (2) a longstanding practice or custom which constitutes the "standard

20   operating procedure" of the local government entity; (3) a decision of a decision-making official

21   who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly

22   be said to represent official policy in the area of decision; or (4) an official with final

23   policymaking authority either delegating that authority to, or ratifying the decision of, a

24   subordinate.  See Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014); Price, 513

25   F.3d at 966.

26        A failure to train or inadequate training may form the basis for municipal liability under §

27   1983 where the training or failure to train amounts to deliberate indifference to the rights of the

28   persons with whom the municipality's employees come into contact.  Flores v. County of L.A.,

1   758 F.3d 1154, 1158 (9th Cir. 2014); Long v. County of L.A., 442 F.3d 1178, 1186 (9th Cir.

2   2006).  Under such a theory, the "issue is whether the training program is adequate and, if it is not,

3   whether such inadequate training can justifiably be said to represent municipal policy." Long, 442

4   F.3d at 1186.  A municipality is deliberately indifferent when the need for more or different action

5   is "so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of

6   constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately

7   indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989); Mortimer v. Baca,

8   594 F.3d 714, 723 (9th Cir. 2010).

9          Allegations of *Monell* liability involving a policy, practice, or custom will be sufficient for

10  purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how

11  the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and

12  (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the

13  deficiency involved was obvious and the constitutional injury was likely to occur. McFarland v.

14  City of Clovis, 163 F.Supp.3d 798, 802 (E.D. Cal. 2016); Young v. City of Visalia, 687 F. Supp.

15  2d 1141, 1149-50 (E.D. Cal. 2009).  A policy, practice, or custom causes harm when it is the

16  "moving force" behind the constitutional violation, a causation standard that entails both causation

17  in fact and proximate causation. Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1096 (9th Cir.

18  2013).

19         *Relevant Allegations*

20         The Complaint alleges that the County had the following policies that were the moving

21  force behind Santor's injuries:  (1) "detaining and/or removing children from the care of their

22  parent(s) without providing the parent(s) with adequate notice of their removal or an opportunity

23  to be heard," (2) "removing and detaining children from their parents beyond a reasonable period

24  after the basis for detention is negated," (3) "inadequate training, and/or by failing to train its

25  officers, agents, and employees, in providing the Constitutional protections guaranteed to

26  individuals, including those under the First and Fourteenth Amendment, when performing actions

27  related to the removal of children from the care of their parents, child abuse investigations, and/or

28  dependency type proceedings," and (4) "[allowing] the removal and detention of a child from their

1  parents where there is no warrant obtained and there are no exigent circumstances present."  <u>See</u>

2  Complaint ¶¶ 51, 55.

3      *Discussion*

4      Initially, Santor is incorrect to cite pre-*Iqbal* Ninth Circuit cases for the proposition that a

5  "bare allegation" of *Monell* liability is sufficient.  In the same year as *Iqbal*, 2009, this Court

6  found that the "bare allegation" pleading standard was incompatible with *Iqbal* and no longer

7  viable.  <u>See</u> <u>Young</u>, 687 F.Supp.2d at 1148.  The Ninth Circuit itself confirmed this conclusion in

8  2012.  <u>See</u> <u>AE ex rel. Hernandez v. County of Tulare</u>, 666 F.3d 631, 637-38 (9th Cir. 2012) (noting

9  that *Twombly* and *Iqbal* "appl[y] to *Monell* claims and should govern future pleadings").  Santor's

10 reliance on a legal proposition that has been defunct for a decade is improper.  The Court will

11 apply the *Iqbal* standard to the four policies identified in the Complaint.

12     The first policy alleged is one of detaining and/or removing children from their parents

13 without providing the parents with notice or an opportunity to be heard.  This is sufficient to

14 identify the policy.  However, the remaining three pleading requirements are not met.  The

15 Constitution permits the removal of a child from her parents' care without a warrant only under

16 the "reasonable cause" exception described above, i.e. reasonable cause to believe that there is an

17 imminent danger of serious injury to the child.  <u>See</u> <u>Keates</u>, 883 F.3d at 1236; <u>Rogers</u>, 487 F.3d at

18 1294; <u>Wallis</u>, 202 F.3d at 1138.  Since no warrant was obtained, the Defendants could remove

19 A.L. only if "reasonable cause" existed.  <u>See</u> <u>Wallis</u>, 202 F.3d at 1130-31, 1138.  However, the

20 cases discussing the "reasonable cause" exception do not include any requirement that parents be

21 given prior notice or an opportunity to be heard.  Because notice and an opportunity to be heard

22 are not part of the "reasonable cause" exception, it is unclear how the identified policy is deficient,

23 how it represents a deliberate indifference to Santor's rights, and how it could have caused Santor

24 any harm.  Therefore, there is no plausible *Monell* claim alleged based on the first policy.  <u>See</u>

25 <u>McFarland</u>, 163 F.Supp.3d at 802; <u>Young</u>, 687 F.Supp.2d at 1149-50.

26     The second policy alleged is one of removing and detaining children from their parents

27 beyond a reasonable period after the basis for detention is negated.  This policy has the same type

28 of deficiency as the first policy.  The only harm to Santor that is adequately identified in the

1  Complaint is the initial removal of A.L., which was done in the absence of a warrant and

2  "reasonable cause."  The Complaint does not allege how long A.L. was kept apart from Santor,

3  nor does the Complaint allege any constitutional violation based on a theory that A.L. and Santor

4  were kept apart for an "unreasonable period of time."  The second policy has no readily

5  ascertainable relationship to the facts of this case.  Given the disconnect between facts alleged and

6  the identified policy, the Complaint fails to identify how this policy is deficient, how it represents

7  a deliberate indifference to Santor's rights, and how it caused Santor any harm.  Therefore, there is

8  no plausible claim alleged based on the second policy.  See McFarland, 163 F.Supp.3d at 802;

9  Young, 687 F.Supp.2d at 1149-50.

10        The allegations regarding the third policy are not particularly clear.  Santor is attempting to

11  allege a training based claim, and it appears that Santor may be complaining about either the

12  complete absence of training or that the provided training was somehow inadequate.

13        To the extent that Santor complains that the provided training was inadequate, she fails to

14  identify how the training was inadequate.  There are many ways that training may be inadequate,

15  including reliance on incorrect legal propositions.  McFarland, 163 F.Supp.3d at 803.  Simply

16  alleging that training was "deficient" or "inadequate" is conclusory and does not support a

17  plausible claim.  See id. at 803, 806; Young, 687 F.Supp.2d at 1149-50.  Further, there are no

18  allegations that describe how the inadequate training caused Santor's injuries or reflect deliberate

19  indifference to her rights.  Therefore, there is no plausible claim alleged with respect to

20  "inadequate training."  See id.

21        To the extent that Santor complains that there was a complete absence of training regarding

22  constitutional protections, the Court is satisfied that a plausible *Monell* claim is alleged.  The

23  individual defendants are all social workers.  It is clear that County social workers will investigate

24  possible instances of child abuse and will confront situations in which removal of a child from

25  parental custody is warranted.  However, the Constitution provides limits on the ability of a social

26  worker to remove a child from parental custody, particularly in the absence of a warrant and

27  "reasonable cause."  See Wallis, 202 F.3d at 1130-31, 1138.  Given the obvious frequency with

28  which social workers investigate instances of child abuse, the failure to provide those workers

with any training regarding the constitutional protections afforded to both parents and children reflects deliberate indifference to the rights of the entire community.  Cf. id.  Further, although the Complaint generally alleges causation, given that A.L. was removed from Santor's custody in the absence of a warrant and without "reasonable cause," the complete absence of training regarding constitutional protections can readily be seen as a moving factor in Santor's harm.  Therefore, there is a plausible claim alleged with respect to an "absence of training."[11]  See Lucas v. City of Visalia, 2010 U.S. Dist. LEXIS 35631, *15-*18 (E.D. Cal. Apr. 8, 2010).

Lastly, the fourth policy identified is one that allows the removal or detention of children from their parents in the absence of both a warrant and "reasonable cause."  For the most part, the Complaint adequately identifies a policy.[12]  Furthermore, although there are no express allegations that explain how the policy is deficient or how the policy reflects deliberate indifference, the description of the policy itself demonstrates both deficiency and deliberate indifference.  This is so because the policy reflects a per se constitutional violation by essentially eliminating the "reasonable cause" exception to the warrant/judicial authorization requirement.  In 2001, *Wallis* recognized not only the importance of child abuse investigations, but also the importance of familial rights:

> [I]t is important to emphasize that in the area of child abuse, as with the investigation and prosecution of all crimes, the state is constrained by the substantive and procedural guarantees of the Constitution. The fact that the suspected crime may be heinous - whether it involves children or adults - does not provide cause for the state to ignore the rights of the accused or any other parties. Otherwise, serious injustices may result. In cases of alleged child abuse, governmental failure to abide by constitutional constraints may have deleterious long-term consequences for the child and, indeed, for the entire family. Ill-considered and improper governmental action may create significant injury  where no problem of any kind previously existed.

[11] The Court notes that the third policy discusses actions "related to removal of children from the care of their parents, child abuse investigations, and/or dependency type proceedings."  The factual allegations in the Complaint implicate the first two actions, removing children and investigating abuse.  However, there are no plausible claims or factual allegations that sufficiently implicate "dependency type proceedings" or harm suffered by Santor in connection with "dependency type proceedings."  Therefore, at a minimum, Santor could not have been harmed from a failure to train social workers regarding "dependency type proceedings."  If Santor wishes to pursue a *Monell* claim relating to "dependency type proceedings," additional allegations are necessary to plausibly allege such a claim.

[12] The Complaint alleges that the County "[has] a policy, or lack thereof, that allows for the removal . . . ."  It is unknown what Santor means by "lack thereof."  Because it cannot be determined with sufficient certainty what is meant by "lack thereof," there is no plausible claim stated in relation to the "lack thereof" language.  The remainder of the Court's analysis will focus on the allegation that the County has a policy.

<u>Wallis</u>, 202 F.3d at 1130-31.  In recognition of the importance of the right of parents and children to live together, "[o]fficials may remove a child from the custody of its parents without prior judicial authorization *only* if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and hat the scope of the intrusion is reasonably necessary to avert that specific injury."  <u>Id.</u> at 1138 (emphasis added).  Therefore, the deficiency in the fourth policy is obvious and the deliberate indifference to constitutional rights (that have been clearly recognized for over two decades) is plain.  Finally, the Complaint generally alleges causation.  Given the unconstitutional nature of the policy and what happened to Santor, i.e. the removal of A.L. without prior judicial authorization and without "reasonable cause," causation is also obvious.  Accordingly, the factual allegations combined with the identification of this particular policy are sufficient to state a plausible claim.[13]

      <u>4.      Kathryn Hartwell and Stanislaus County Community Services Agency</u>

      *<u>Defendants' Argument</u>*

      Defendants argue that that Stanislaus County Community Services Agency ("SCCSA") is merely a department of Stanislaus County.  Because Stanislaus County is a named defendant, it is unnecessary and superfluous to keep the SCCSA in this case.  Defendants also argue that there are insufficient allegations against Kathryn Harwell.  Harwell's name is identified in the caption of the Complaint, but the only other reference to Harwell is that she established and/or followed policies which caused the violation of Santor's constitutional rights.  There are no allegations that identify Harwell's employer, title, or actual conduct that may form the basis of any liability.

      *<u>Plaintiff's Opposition</u>*

      Santor does not address the arguments made regarding SCCSA.

---

[13] The Court notes that the City has argued that there is a contradiction between the allegation that a policy existed that allowed for the removal of children without a warrant and without "reasonable cause" and the allegation that the social workers conspired to allege false and fraudulent facts of imminent risk because they knew no reasonable judge would authorize the removal of A.L from Santor.  The City argues that there is tension because the conspiracy allegation could be read as indicating that the social workers knew of the necessary requirements for a removal without a warrant, but nevertheless acted against policy.  However, the allegation could also be read as indicating that the social workers knew about the constitutional protections and conspired to try to meet those constitutional standards.  That is, the allegation could be read as addressing only constitutional standards, particularly because County policy is nowhere mentioned in the conspiracy allegation.  <u>See</u> Complaint at ¶ 23.  Under this reading, there is no inconsistency.  Further, Rule 8(d) permits inconsistency with respect to claims and defenses, and the inconsistency extends to both factual and legal allegations. <u>See</u> <u>Lucas v. City of Visalia</u>, 726 F.Supp.2d 1149, 1159 (E.D. Cal. 2010).

1   With respect to Harwell, Santor alleges that Harwell is the director of SCCSA and was

2   responsible for establishing and maintaining the policies that every County social worker must

3   follow.  Because of Harwell's failure to require compliance with laws regarding the removal of

4   children without a warrant, Santor was harmed.  Santor requests leave to amend the complaint to

5   add necessary factual allegations regarding Harwell.

6       *Discussion*

7       a.      SCCSA

8       The County is a named defendant in this case, and the SCCSA is a department/sub-unit of

9   the County.  Naming the SCCSA as a separate party is at a minimum redundant.  See McFarland,

10  163 F.Supp.3d at 808.   Because the County is already a named defendant, there is no utility in

11  keeping the SCCSA as a party.  Therefore, the Court will dismiss the SCCSA from this case.  See

12  id.

13      b.      Harwell

14      Santor's opposition concedes that there are insufficient allegations against Harwell and

15  requests leave to amend.  It is unclear, however, in what capacity Santor wishes to sue Harwell.

16      If Santor means to pursue claims against Harwell in her official capacity, then amendment

17  is unnecessary.  As the director of SCCSA, Harwell is a County employee.  Because the County is

18  already a party, and an official capacity suit against a municipal employee is really a suit against

19  the municipal employer, see Butler v. Elle, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002), adding an

20  "official capacity" claim against Harwell would be redundant.[14]  Center for Bio-Ethical Reform,

21  Inc. v. Los Angeles Cnty Sheriff's Dept., 533 F.3d 780, 799 (9th Cir. 2015); McFarland, 163

22  F.Supp.3d at 808.  Therefore, no amendment will be permitted that has the effect of naming

23  Harwell as a defendant in her official capacity.

24      If Santor means to pursue claims against Harwell in her individual capacity, then it is

25  possible that Santor can allege non-redundant claims.  Cf. Butler, 281 F.3d at 1023 n.8 (discussing

26

27  [14] To the extent Santor may be attempting to allege *Monell* liability because Harwell has final policy making authority
    and she adopted a policy, then Santor can simply allege that theory and identify Harwell as the relevant official.

28  Because the County is already a party, it would not be necessary to add Harwell as a party.

1  the difference between individual and official capacity claims).  There is no vicarious liability

2  under § 1983.  Keates, 883 F.3d at 1242.  A defendant may be held liable as a supervisor if there

3  exists either:  (1) her personal involvement in the constitutional deprivation, or (2) a sufficient

4  causal connection between the supervisor's wrongful conduct and the constitutional violation.  Id.

5  at 1242-43; Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).  If Santor has sufficient

6  information to plausibly allege an individual capacity supervisory liability claim against Harwell,

7  then Santor may include such a claim in an amended complaint.

8       5.    Conclusion

9       The County Defendants have moved to dismiss all claims against them.

10      As to the first cause of action, the Complaint plausibly alleges a Fourteenth Amendment

11  violation.  The allegations also demonstrate that qualified immunity cannot be granted at this time.

12  Therefore, the first cause of action will not be dismissed.

13      As to the second cause of action, the Complaint fails to allege that the state court

14  proceedings led to the continued separation of A.L. from Santor or that such a result was because

15  of the misrepresentations made by Granados and Pasillas.  Therefore, dismissal is appropriate.

16  However, because it is likely that Santor can correct these deficiencies, dismissal will be with

17  leave to amend.

18      As to the third cause of action, there are four policies identified.  The first policy is

19  deficient because it adds a requirement that is not part of the "reasonable cause" exception to

20  removal without prior judicial approval.  Because the identified policy is contrary to law,

21  dismissal without leave to amend of any *Monell* claim based on that policy is appropriate.  The

22  second identified policy is deficient because the policy has no clear relationship to the facts or

23  constitutional violation that are pled in the Complaint.  Because it is not clear that amendment

24  would be futile, dismissal with leave to amend is appropriate.  The third policy can be read as

25  alleging the complete absence of training regarding constitutional protections.  So reading the third

26  policy, a plausible claim is stated and dismissal is inappropriate.  However, the third policy can

27  also be read as merely alleging "inadequate training."  That allegation does not state a plausible

28  claim because it is nothing more than a conclusory allegation, which makes dismissal appropriate.

1   Because it is not clear that amendment would be futile, dismissal will be with leave to amend.

2   The fourth identified policy supports a plausible claim; thus, dismissal is improper.

3          As to SCCSA, that entity is an arm of Stanislaus County.  Because the County is already a

4   defendant, SCCSA is redundant and will be administratively dismissed from this case.

5          Finally, no plausible claims are alleged against Harwell.  Permitting amendment to allege

6   official capacity claims would be redundant since the County is already a party.  However, it is

7   unclear whether personal capacity claims against Harwell can be alleged.  Therefore, all claims

8   against Harwell will be dismissed, but with leave to amend to allege individual capacity claims.

9

10  **II.      THE CITY'S MOTION**

11         *Defendant's Argument*

12         The City argues that the Complaint improperly lumps all Defendants together.  The

13  allegations are so broad that lumping the Defendants together makes it nearly impossible for the

14  City to file a response.  The only allegation regarding the City that can possibly be gleaned is that

15  some of the social worker defendants requested law enforcement to stand by as the social workers

16  took A.L. into custody.  Santor should be required to make particular allegations as to the conduct

17  of the City that is at issue.  The City also argues that the *Monell* allegations against it are

18  insufficient.  There are no policies that are specifically ascribed to the City, and the Complaint

19  makes only threadbare and generic allegations.

20         *Plaintiff's Opposition*

21         Santor argues that the first cause of action alleges that City police officers acted under

22  color of law and in a personal capacity.  Further, the Complaint alleges that both City and County

23  actors violated her Fourteenth Amendment rights to live with A.L. when the City police officers

24  participated in the removal of A.L. without a warrant and without "reasonable cause."  Therefore,

25  there is a plausible § 1983 claim alleged.  Santor also argues that the she has properly alleged

26  *Monell* liability.  The Complaint alleges that the City established policies and procedures

27  regarding the removal of children that did not safeguard constitutional protections and that those

28  policies where the moving force behind Santor's injuries.

1     *Discussion*

2     1.     First Cause of Action

3     There is no plausible cause of action against the City in the first cause of action.

4 Municipalities like the City are responsible for constitutional violations "*only when* 'an action [is

5 taken] pursuant to [an] official municipal policy of some nature' caused the violation." <u>Castro</u>,

6 797 F.3d at 670 (emphasis added) (quoting <u>Monell</u>, 436 U.S. at 691). The first cause of action

7 contains no allegations regarding policies, customs, or practices, rather, the allegations focus on

8 the actual seizure of A.L. and the alleged insufficient basis for the seizure. Presumably Santor

9 intends to identify the City officers who participated in the seizure of A.L. and pursue individual

10 claims against those officers. Santor can do so at this point through the use of Doe pleading if she

11 does not know the names of the officers who were involved. However, the City is not a proper

12 substitute for its individual police officers, otherwise *respondeat superior* liability will effectively

13 be invoked. The § 1983 claims against the City are to be confined to *Monell* claims. <u>See</u> <u>id.</u>

14 Because the first cause of action is not a *Monell* claim, dismissal of the City is appropriate.

15     2.     Third Cause of Action – *Monell*

16     The third cause of action lumps three defendants together (Harwell, the County, and the

17 City) without linking a specific policy to a specific defendant. Assuming that Santor is attempting

18 to allege that the City maintains the identical policies as the County, there are significant

19 problems.

20     First, with respect to the first and second policies (removal of a child without parental

21 notice and opportunity to be heard and maintaining removal for an unreasonable period of time),

22 neither policy has any clear relationship to the facts of this case in general or the specific conduct

23 of City police officers. As discussed above, notice and an opportunity to be heard are not part of

24 the "reasonable cause" exception for removal without a warrant. <u>Cf.</u> <u>Keates</u>, 883 F.3d at 1236;

25 <u>Rogers</u>, 487 F.3d at 1294; <u>Wallis</u>, 202 F.3d at 1138. Since the "reasonable cause" exception is the

26 only basis upon which the removal of A.L. can be defended, the absence of notice and an

27 opportunity to be heard could not have caused Santor any injury. Further, there are no allegations

28 that explain how long A.L was kept away from Santor or under what circumstances and through

what procedures the removal was sustained.  Additionally, there are no allegations that link any continued separation of A.L from Santor to any actions by City personnel.  Cf. Yousefian v. City of Glendale, 779 F.3d 1010, 1016 (9th Cir. 2015) (holding that there is no *Monell* liability if no governmental actor/employee violated a plaintiff's constitutional rights).  Therefore, the first and second identified policies do not plausibly allege *Monell* liability against the City.

With respect to the third and fourth policies, the Court's analysis is generally the same as the analysis with respect to the County.  Potential *Monell* claims are stated with respect to a policy that permits the removal of a child in contravention of *Wallis* (i.e. without prior judicial authorization and without "reasonable cause") and the absence of any training regarding the constitutional protections that families enjoy in connection with child removals.  No plausible claim is stated with respect to general allegations of "inadequate training."  See McFarland, 163 F.Supp.3d at 803, 806.

The Court concludes that no potential *Monell* claims are stated with respect to the third and fourth policies because the Complaint does not plausibly allege that the City police officers violated Santor's constitutional rights.  Without a constitutional violation by an employee of a governmental entity, there is no *Monell* liability.  Yousefian, 779 F.3d at 1016.  The actions of the City police officers were fundamentally different from the actions of the County social workers.  Two of the social workers (Laster and Kilgore) actively investigated Santor and her family (including visual observations of A.L. and Santor and discussions with medical personnel) but did not uncover abuse or imminent danger, and four social workers (Laster, Kilgore, Greene, and Perez) conferred and agreed to remove A.L. from Santor without prior judicial authorization or "reasonable cause."  Thus, as described above, the Complaint plausibly alleges that County employees violated Santor's Fourteenth Amendment rights.  With respect to the City police officers, however, the Complaint alleges that some of the social workers enlisted the aid and assistance of City police officers (names and numbers unknown) in the removal of A.L., that City police officers (along with Laster and Kilgore) knew that there was no "reasonable cause" because A.L was in the presence of both parents and her maternal grandparents at the time of the removal, and that the social workers removed A.L. with the assistance of the City police.  See Complaint ¶¶

24-28.  Specific allegations regarding the City officers are not made, and there are no details as to how the City police officers' assistance was enlisted by the social workers.  The Complaint does not explain what the officers knew or were told about the proposed removal including the grounds for it, whether the officers made any independent assessments in support of removal, and does not explain what exactly the City police officers did at the removal other than "assist" and apparently take Santor into custody under Cal. Civ. Code § 5150.  See id.

This lack of specifics regarding the City officers is problematic.  In *Sjurset v. Button*, the Ninth Circuit addressed allegations against police officers who entered a home to remove children from their parents' custody without a warrant and allegedly without "reasonable cause."  See Sjurset v. Button, 810 F.3d 609, 613-14 (9th Cir. 2015).  The officers removed the children at the direction of county social workers.  See id. at 613.  At the time of the removal, the officers did not participate in the decision to remove the children, rather that decision was made prior to the officers' entry, and the police officers made no independent judgments as to whether "reasonable cause" existed to remove the children.  Id.  The Ninth Circuit held that the officers' actions were not clearly unconstitutional under *Wallis* and *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004) because the officers did not participate in the decision to remove the children and did not act as a collective team with the social workers in planning and carrying out the removal.  See id. at 618-19.  Instead, the officers made no independent judgments or decisions regarding the removal and merely assisted the social workers to effectuate the removal.  See id. at 620.  The officers' conduct was consistent with "well established precedent, which holds that '[l]aw enforcement officers and agencies are entitled to rely on one another to a certain extent.'"  Id. at 621 (quoting Guerra v. Sutton, 783 F.2d 1371, 1375 (9th Cir. 1986)).  The officers were not required to challenge the removal determination, but they also could not "blindly rely on the existence of a protective custody determination."  Id. at 620-21.  However, the officers had knowledge of key details that had also informed the social workers' decision to remove the children without a warrant.  See id. at 621-22.  Given these considerations, the Ninth Circuit determined that the officers were entitled to qualified immunity.  See id. at 622.  *Sjurset* has been read to mean that it is possible for law enforcement officials to rely on a social worker's removal decision, even if the removal decision

1  was wrong.  See Birair v. Flam, 809 F. App'x 394, 394 (9th Cir. 2020) ("[In *Sjurset*,] we held that

2  officers are entitled to rely on a child welfare agency employee's removal decision.").

3         As applied to this case, the Court cannot tell whether the City police officers did anything

4  different than the officers is *Sjurset*.  The Complaint's allegations simply seem to indicate that the

5  officers were requested to assist in a removal because the social workers asked them to do so.

6  Without more specifics regarding the City police officers (such as their involvement with the

7  planning of the removal, whether they exercised independent judgment with respect to the removal

8  decision, what they knew or were told about the need for removal, and what they did at the scene),

9  the allegations are insufficient to place the officers' conduct outside of *Sjurset* and the general rule

10  that, to a certain extent, police officer may rely on the determinations of child welfare agencies.

11         It is true that the Complaint argues that the Defendants knew that "reasonable cause" did

12  not exist because A.L. was in the presence of Santor, the father, and her maternal grandparents.

13  However, O.L. had died while in the collective care (albeit a temporary collective care) of Santor

14  and the father while at the father's mobile home.  Thus, the purpose of the removal appears to

15  have been to separate A.L. from both Santor and the father.  Because Santor and the father were

16  also present, the mere fact that the grandparents were present would not necessarily indicate to the

17  City police officers that no danger was imminent.[15]

18         Additionally, the first cause of action alleges that "Defendants" conspired to

19  unconstitutionally remove A.L.  See Complaint ¶ 34.  It is possible to allege a § 1983 conspiracy.

20  Klingele v. Eikenberry, 849 F.2d 409, 413 (9th Cir. 1988).  A conspiracy is "a combination of two

21  or more persons who, by some concerted action, intend to accomplish some unlawful objective for

22  the purpose of harming another . . . ."  Vieux v. East Bay Reg'l Park Dist., 906 F.2d 1330, 1343

23  (9th Cir. 1990).  A § 1983 conspiracy requires *inter alia* the existence of an agreement or meeting

24  of the minds to violate constitutional rights, but the agreement need not be overt and can be

25  inferred from circumstantial evidence.  Crowe v. County of San Diego, 608 F.3d 406, 440 (9th

26

27  [15] The Court agrees that the presence of the grandparents is significant, particularly for the claims against the social
    workers.  Nevertheless, without further allegations regarding the knowledge and actions of the City police officers, the
28  mere presence of the grandparents is not enough to plausibly show that the City police officers knew that "reasonable
    cause" did not exist.

Cir. 2010).  A complaint must allege "specific facts" to support the existence of a conspiracy.
Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004); Buckey v. County of L.A., 968 F.2d 791, 794 (9th Cir. 1992); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989). An unadorned conclusory allegation of a conspiracy without factual specificity is  insufficient to allege a conspiracy.  See Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 626 (9th Cir. 1988); Burns, 883 F.2d at 821; Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989); see also Olsen, 363 F.3d at 929.

Here, there are insufficient specific factual allegations that support the existence of a conspiracy between the social workers and the City police officers.  The Complaint does not adequately describe agreements between the City police officers or expressly allege that the City police officers shared in the common goal of violating Santor's constitutional rights.  Further, as discussed above, the fact that A.L. was in the custody of Santor, the father, and the maternal grandparents would not alone show the City police officers that there was no "reasonable cause." While the Complaint alleges that the social workers enlisted the aid of the City police officers to remove A.L., that act by itself does not support the inference that a conspiracy existed.  *Sjurset* shows that police officers may assist social workers in the emergency removal of a child and that the officers are not required to review and contest every aspect of the social workers' investigation and conclusions.  See Sjurset, 810 F.3d at 620-21.  Given the nature of any emergency removal of a child from parental custody, requesting the presence of law enforcement personnel during the actual removal would appear to be a prudent thing to do and not unusual.  Cf. id.  Therefore, without adequate specific facts, the Complaint makes only a conclusory allegation of conspiracy that fails to cross the line from "possible" to "plausible."  See Twombly, 550 U.S. at 556-57; see also Olsen, 363 F.3d at 929; Burns, 883 F.2d at 821; Woodrum, 866 F.2d at 1126.

In sum, while there are potentially viable *Monell* claims, the allegations do not sufficiently distinguish the City officers from the *Sjurset* officers and thus, do not plausibly indicate that the City officers violated Santor's rights.  See Birair, 809 F. App'x at 394.  The absence of a constitutional violation dooms any possible *Monell* claim.  See Yousefian, 779 F.3d at 1016. Dismissal of the third cause of action is appropriate.

773ac43f1a92c232

**3.**   **Conclusion**

The City moves to dismiss all claims against it.

As to the first cause of action, there are no policies, practices, or customs identified, rather, only a general act of "assisting" is ascribed to unknown City police officers.  In the absence of a policy, practice or custom, the City cannot be liable.  *Monell* claims should be alleged against the City as a cause of action that is separate and distinct from the claims against City personnel who are being sued in their individual capacities.  Therefore, no plausible claim is alleged against the City and dismissal of the first cause of action without leave to amend is appropriate.

As to the third cause of action, no plausible claims are stated.  Dismissal of the third cause of action is "globally" appropriate because the allegations do not plausibly indicate that any City employee violated Santor's rights.  In terms of leave to amend, leave to amend will be granted with respect to the second, third, and fourth identified policies to correct the various deficiencies identified in this order.  Any *Monell* claim based on the first identified policy will be dismissed without leave to amend because amendment would be futile.  Any *Monell* claims against the City should be alleged as a separate stand-alone claim.

Finally, any amended complaint should be cognizant of two pleading practices that are frowned upon.  First, the amended complaint should avoid lumping all Defendants together, wherever possible.  A complaint should explain how each defendant participated in or is liable for each constitutional violation allegedly committed.  See Greer v. City of Highland Park, 884 F.3d 310, 315-16 (6th Cir. 2018); Bryson v. Gonzales, 534 F.3d 1282, 1290 (10th Cir. 2008).  Because broad allegations against numerous defendants do not provide the defendants with adequate notice of the plaintiff's contentions, the amended complaint should clearly identify which Defendants performed which acts/how each defendant violated Santor's constitutional rights.  See Flores v. EMC Mortg. Co., 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014); Sheffield v. Orius Corp., 211 F.R.D. 411, 415 (D. Or. 2002).  Second, while a cause of action in a complaint may incorporate by reference specific and *relevant* prior paragraphs, the incorporation of *all* prior paragraphs is an improper practice.  See Weiland v. Palm Beach Cnty., 792 F.3d 1313, 1321-23 (11th Cir. 2015); Deerpoint Grp., Inc. v. Agrigenix LLC, 345 F.Supp.3d 1207, 1234 n.15 (E.D. Cal. 2018).

1    **ORDER**

2          Accordingly, IT IS HEREBY ORDERED that:

3    1.     The County's motion to dismiss (Doc. No. 20) is:

4          a.     DENIED as to the first cause of action and the third cause of action  based on the

5                fourth identified policy and the part of the third identified policy involving the

6                complete absence of training;

7          b.     GRANTED as to the second cause of action and the third cause of action based on

8                the second identified policy and the part of the third identified policy involving

9                "inadequate training," and those claims are DISMISSED with leave to amend;

10          c.     GRANTED as to the third cause of action for the first identified policy and that

11                claim is DISMISSED without leave to amend;

12          d.     Defendant Stanislaus County Community Services Agency is DISMISSED without

13                leave to amend as a redundant defendant;

14          e.     Defendant Kathryn Hartwell is DISMISSED from this case with leave to amend to

15                allege personal capacity claims only;

16    2.     The  City's motion to dismiss (Doc. No. 18) is GRANTED;

17          a.     The first cause of action and the third cause of action for liability based on the first

18                identified policy are DISMISSED without leave to amend;

19          b.     The remainder of the third cause of action is DISMISSED with leave to amend;

20    3.     Within twenty-one (21) days of service of this order, Plaintiff may file an amended

21         complaint that complies with the analyses of this order;

22    4.     If Plaintiff fails to file a timely amended complaint, then leave to amend shall be

23         automatically revoked without further order, and Defendants shall file an answer within

24         twenty-eight (28) days of service of this order.

25

26    IT IS SO ORDERED.

27    Dated:  <u>August 24, 2020</u>          _____

                                        SENIOR  DISTRICT  JUDGE

28

29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28